Frazier v. Lafferty.

# Mrs. M. M. Frazier *v.* W. T. Lafferty *et al.**

## (*Nashville.* December Term, 1923.)

1. **BILLS AND NOTES.** Rule stated as to rights of bona fide holder of note, executed in transaction prohibited by statute.

   *Bona-fide* holder of a negotiable paper, executed as part of a transaction prohibited by statute, may generally enforce its collection, except where statute has expressly or by implication declared paper void. (*Post, p*: 107.)

2. **LICENSES.** Notes transferred as part of transaction in violation of Blue Sky Law held not recoverable back from bona-fide holder.

   Notes owned by complainant and transferred by him in payment of stock in corporation which did not comply with Blue Sky Law *held* not recoverable back from holder in due course and for value; the statute having no application to business of noncomplying corporation independently of sale to investors of its securities, in view of section 6 (Shannon's Code, section 3273a126. (*Post, pp.* 107-109.)

   Acts cited and construed: Acts 1913, ch. 31, sec. 6.

   Cases cited and approved: Snoddy v. Bank, 88 Tenn., 573; Bank v. Chapman, 122 Tenn., 415; Cohn v. Lunn, 133 Tenn., 547; Edwards v. Fruit Products Co., 133 Tenn., 142; Pontiac Savings Bank v. Reinforced Concrete Pipe Co., 178 Mich., 261.

   Laws cited and construed: Laws 1913, ch. 31.

   Code cited and construed: Sec. 3273a 126(S).

3. **ESTOPPEL.** One transferring note for stock in corporation not complying with Blue Sky Law held estopped because of negligence to recover back from transferee of corporation.

   Complainant who transferred note owned by her in payment of stock in corporation which did not comply with Blue Sky Law, and

---

*On constitutionality of Blue Sky Laws, see note in L. R. A., 1917F 524.

For authority discussing the validity and interpretation of the Blue Sky Laws see notes in 15 A. L. R., 262; 24 A. L. R., 524, 27 A. L. R., 1169.

Frazier v. Lafferty.

who indorsed note while it was in hands of transferee of corporation and at his request, under circumstances affording her opportunity to protect herself and him, *held* estopped from rescinding transfer on theory that, where one of two persons must suffer loss, the one who occasioned loss must suffer, and in view of Shannon's Code, sections 3516a73, 3516a74. (*Post, pp.* 109, 110.)

ON PETITION TO REHEAR.

4. **LICENSES.** Buyer of note from corporation not complying with Blue Sky Law held not chargeable with notice that corporation acquired it in exchange for stock.

While noncompliance by corporation with Blue Sky Law renders its stock-selling transactions unlawful, its corporate existence, general powers, and ordinary business, are corporate existence, general powers, and ordinary business, are not affected by such noncompliance, any buyer of note, indorsed by it without notice on its face or otherwise, that it was acquired by corporation in exchange for its stock, is not legally charged with notice of the illegality of transaction of which original transfer of note was part. (*Post, pp.* 110-116.)

Acts cited and construed: Acts 1913, ch. 31.

Cases cited and approved: Goodyear v. Menx, 143 Tenn., 287; Dixie Rubber Co. v. McBee, 148 Tenn., 168; 'S. S. McConnell, Receiver, v. Cy. H. Lyle et al., 263 S. W.,—; Snoddy v. Bank, 88 Tenn., 573; Edwards v Fruit Products Co., 133 Tenn., 142.

FROM LAWRENCE.

Headnote 1. Bills and Notes, 8 C. J., sections 1032, 1033; 2. Blue Sky Law, 8 C. J., p. 1130; 3. Estoppel, 21 C. J., section 176; 4. Blue Sky Law, 8 C. J., p. 1130.

Appeal from the Chancery Court of Lawrence County. —HON. THOS. B. LYTLE, Judge.

WEBSTER & WEBSTER, for appellant.

MORRISON & MORRISON, for Lafferty.

C. C. DAVIS and ROBERTS & COOPER, for Citizens Bank and Am. Nat. Bank.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill seeks to recover from defendants three real estate notes of $1,000 each, which complainant owned and transferred by delivery to a corporation known in the record as the Bynn Yanns Company for shares of its stock, on the ground of fraudulent misrepresentation, and she alleges and particularly relies on the fact that this corporation was subject to the Blue Sky Law of 1913 (Laws, Ex. Sess. 1913, chapter 31), and had failed to comply therewith. It is insisted for defendants that they are holders in due course of this negotiable paper and had paid value therefor, without notice of complainant's claims or rights, or of the fact that the transaction involved a sale of stock of the corporation, or that the corporation had failed to comply.

Two of the notes are held by defendant banks, and the proof sustains their contention that they bought for value without notice and are holders in due course. The pertinent question as to them, conceding the transfer to these banks of the notes by the complainant to the corporate vendor and indorser thereof to be subject to attack as between said parties because in violation of the Blue Sky Law, is whether or not this attack is available as against these innocent transferees and present holders for value.

We find that the court of civil appeals is correct in its holding and is sustained by the authorities cited in its opinion, that the illegality attaching to the transaction as between the noncomplying corporation and the pur-

chaser of its stock does not affect the right of innocent holders in due course of these negotiable instruments.

This is not a case of an obligation issued or transferred in violation of a statute expressly declaring it void as in *Snoddy* v. *Bank,* 88 Tenn., 573, 13 S. W., 127, 7 L. R. A., 705, 17 Am. St. Rep., 918. This distinction has been clearly recognized by this court. *Bank* v. *Chapman,* 122 Tenn., 415, 424, 123 S. W., 641; *Cohn* v. *Lunn,* 133 Tenn., 547, 550, 182 S. W., 584.

The rule is that a *bona-fide* holder of negotiable paper, executed as part of a transaction prohibited by statute, may enforce its collection, except where the statute has expressly or by necessary implication declared it void. This principle is applied in *Edwards* v. *Fruit Products Co.,* 133 Tenn., 142, 180 S. W., 163, and is in accord with our Negotiable Instruments Act of 1899.

In Joyce's Defenses to Commercial Paper (2d Ed.) vol. 1, section 163, it is said:

"Except where it is provided by statute that a bill or note issued by a corporation shall be void, such an instrument, which does not appear upon its face to be illegal or unauthorized, will not, in the hands of a *bona-fide* holder without notice who has paid a valuable consideration therefor, be subject to the defense that it is illegal or issued without authority."

To the same effect see 8 C. J. sections 1032, 1033, 1038; also *Pontiac Savings Bank* v. *Reinforced Concrete Pipe Co.,* 178 Mich., 261, 144 N. W., 486.

It satisfactorily appears that the defendant banks have carried the burden lawfully thrown upon them on the facts of this case of showing that they purchased these notes without knowledge of the alleged infirmity in the original transaction.

The court of civil appeals in its opinion also correctly limits the scope of the Blue Sky Law to transactions covered by its terms. Neither the corporate existence nor the general business of a corporation are necessarily affected by noncompliance with this act, which relates alone to transactions touching sales of its stocks or other securities. This law is expressly so limited providing that it shall be unlawful for any noncomplying company "to transact any business in form or character similar to that set forth in section 1 of this act" (section 6, chapter 31, Acts 1913, Ex. Sess. Shan. Code section 3273a126).

With respect to the third note held by defendant Lafferty, the facts as to notice and knowledge on his part acquired before, or at the time of, his acquisition of his note are more involved in doubt. While he insists that he did not understand that stock in this corporation was the consideration passing between the complainant and her vendees of the note, there are circumstances which would seem to have put him on notice of the truth of the situation. However, we find it unnecessary to determine this exact issue of fact, since, further agreeing with the holding of the learned court of civil appeals, we find that the complainant has estopped herself from extending to defendant Lafferty her right of rescission and recovery of this part of the consideration.

It appears that, before finally parting with all control of the consideration paid by him to those delivering the note to him, he took the precaution to interview the complainant and secure from her, in the nature of a guarantee of the legitimacy of the transaction by which he was acquiring the note, and particularly her acquiescence, her personal indorsement, under circumstances which put her on notice of his pending investment in the note

and afforded her opportunity to object and protect both herself and him. While she says that she indorsed the note when so approached and advised unwillingly, the facts do not sustain her claim of compulsion or duress, and, having thus affirmatively ratified the sale to defendant Lafferty of this note, she cannot now be heard to complain against him. Granting that the complainant suffers a loss, the equitable principle that, where one of two persons must suffer loss, he should suffer whose act or neglect occasioned the loss, has application. She waived her right to pursue her remedy of rescission and recovery of this note against this defendant by her indorsement of it for the identical purpose of assuring the defendant in his pending purchase of it, and she thus became a party to its transfer to him. It is insisted that the defendant had previously made the purchase, but it is reasonably clear that he had taken steps to protect himself in case the complainant had elected to exercise her rights at that time.

Moreover, our Negotiable Instruments Law again has application. Therein it is expressly provided that ''every indorser who indorses without qualification warrants to all subsequent holders in due course,'' among other things, ''that the instrument is genuine and in all respects what it purports to be; that all prior parties had capacity to contract; that the instrument is at the time of his indorsement valid and subsisting.'' Shannon's Code, sections 3516a73, 3516a74.

It follows that the decree of the court of civil appeals must be affirmed.

### ON PETITION TO REHEAR.

A petition to rehear is presented which challenges the

correctness of the conclusions announced in the opinion of this court, handed down on the 5th day of July, with respect to both of the determinative issues involved largely upon the theory (1) that *Goodyear* v. *Meux,* 143 Tenn., 287, 228 S. W., 57 and *Dixie Rubber Co.* v. *McBee,* 148 Tenn., 168, 253 S. W., 353, are controlling and have not been followed: and (2) that the disposition of the cause was too speedy to admit of full consideration of the record. The failure of the court to deal specifically with the various formal assignments is also made the subject of comment.

Counsel are in error in assuming that prompt disposition of a case, or failure to treat specifically in our written memorandum the assignments as stated and grouped by counsel, properly understood, indicates lack of attention by the court to the briefs and arguments of counsel, or to the record as a whole. Varying circumstances control the order and time of disposition, unnecessary to detail; and it is the constant effort of the court to find and focus the determinative issues and to condense our discussion into the briefest space consistent with reasonable clearness. However, it is apparent that in the instant case further comment is necessary in order to convey to counsel the views of the court, and particularly to make clear, if possible, the scope and applicability of chapter 31, Acts of 1913, known as the Blue Sky Law.

It is insisted for petitioner: First, that the defendant banks and Lafferty bought these notes from a noncomplying corporation; and this proposition of fact is conceded. Second, that these defendants bought with knowledge that these notes had been acquired by the corporation in exchange for its stock while noncomplying (with

the Blue Sky Law) and therefore unlawfully. We have not been able to agree that the record sustains this insistence as to the defendant banks, or satisfactorily as to Lafferty, but we have given in our original opinion reasons which seem to us to be controlling why the complainant may nevertheless not recover against Lafferty. Third, that as a matter of law all transactions of a noncomplying corporation are unlawful. And, fourth, that its transactions are therefore so fatally tainted as to render negotiable paper issued, or transferred by its indorsement, noncollectible in the hands even of holders in due course.

The latter two legal propositions are esteemed by us to be determinative of the case for petitioner, and were so treated and were attempted to be clearly disposed of heretofore. They appear to be so recognized in the petition to rehear.

Neither *Goodyear v. Meux* nor *Dixie Rubber Co. v. McBee,* which it is insisted were disregarded in our opinion, are in conflict with the conclusions heretofore announced in this case. Both were suits between the original parties to stock purchases from noncomplying corporations, which were doing the business defined by the act as constituting them investment companies, and no question of *bona-fide* holding of negotiable paper was involved. Holding that the stock sale in Dixie Rubber Company, supra, was in violation of this law, Mr. Justice Smith said, "And no action could be predicated *by the investment company* on the note executed for stock thus sold;" that "the *complainant* cannot recover on the note." Italics are used by us to emphasize the distinction. It is true that in the course of this opinion it is

Frazier v. Lafferty.

said that a noncomplying corporation "cannot transact business in the State"; and again, in responding to a petition to rehear in the same case (262 S. W., 32), the court uses a like expression, but an examination of the context clearly shows that it was the transaction of the character of business defined and prohibited by the act of 1913 which was referred to, and not the general business of the corporation, or its transactions wholly unrelated to the selling of stocks and other securities described in section 1 of the act.

So, in *Goodyear* v. *Meux*, supra, it was found that the transaction was a sale of stock by a corporation engaged in this business, prohibited unless compliance had been had with this statute, and therein properly held that no recovery could be had by the corporation on obligations growing out of a transaction under these conditions. While in the course of the opinion by Mr. Justice GREEN it is said that "it is provided that this statute shall be complied with before any attempt to sell stock, or do any other business in the State is made," this expression must be construed in its connection and limited in its application to the nature of business under discussion. This is made clear by a following express declaration, evidently intended to avoid the very misapprehension into which counsel for petitioner have fallen, when the court says, "It was not intended to regulate the ordinary business of corporations, domestic or foreign, within the State." This distinction has been since emphasized in our unpublished opinion in *S. S. McConnell, Receiver* v. *Cy H. Lyle et al.*, 263 S. W., —, decided at the present term, to which counsel for petitioner refer. Therein it was said that a failure to comply with this statute did not make

150 Tenn.—8.

the corporation an "outlaw," and render it incapable of doing business generally, or make unlawful its ordinary business transactions. And to the same effect is *Reed* v. *Appleby* (Tenn.), 262 S. W., 36.

In our original opinion reference was made to section 6 of the act, which is the section declaring a violation of the act unlawful, wherein it appears that this provision is expressly limited to transactions in form or character similar to those set forth in section 1 of the act; and by reference to this section it is to be seen that these transactions are of certain classes only. Omitting nonpertinent recitals, and bracketing exceptions made, section 1 reads as follows:

"That every corporation . . . which shall sell or negotiate for the sale of any stocks, bonds, or other securities of any kind or character or any lands or town lots in any quantity situated outside of this State [other than bonds of the United States, the State of Tennessee, or of some municipality of the State of Tennessee, and notes secured by mortgages on real estate located in the State of Tennessee] to any person," etc.

It may be observed parenthetically that the particular form of notes which are the subject of the instant litigation, being real estate vendor lien notes, are perhaps embraced within the exception described above as "notes secured by mortgage on real estate located in the State of Tennessee," looking to the evident intent of this exception rather than the technical language employed. Anderson's Law Dictionary defines "Equitable Mortgage" as "the lien of a vendor of realty for unpaid purchase money." But the disposition of the instant case does not require a decision of this question.

Frazier v. Lafferty.

It is true, as stated by petitioner, that in *Goodyear* v. *Meux*, supra, it was held that the statute was passed for "the protection of investors." And so it was—for the protection of investors in the securities issued by a corporation engaged in the business of marketing its securities. This was the purpose and the whole purpose of the legislation, and we hold it to be so limited. It has no application to transactions or business of the corporation independent of and unrelated to the sale to investors of its securities.

It follows that petitioner is in error in his insistence, very earnestly made, that these defendants "dealt directly with a corporation that under the laws of the State of Tennessee had no right to transact any character of business in the State of Tennessee, except that of filing their charter and other papers required to be filed under the Blue Sky Law.

So it is that, in the instant case, while its stock-selling transactions were unlawful, the corporate existence, general powers, and ordinary business of the company were not affected by the failure to comply. Now the particular pertinency of this distinction in the instant case consists in this: A buyer of paper, executed or indorsed by the corporation, without notice on its face or otherwise that it grew out of the character of business defined in the act, is not legally charged with notice of this illegality in its inception. The corporation being authorized generally to do business, no presumption arises that the transaction is one growing out of unlawful business, or that the corporation is engaged in that business defined and prohibited if done without having complied with the act. The buyer may therefore became a holder in due

course and be protected as such under the provisions of our negotiable instrument act, and of the authorities cited in our original opinion. As above indicated, we have found the defendant banks to occupy this position.

Petitioner further insists that the rule announced in *Snoddy* v. *Bank,* 88 Tenn., 573, 13 S. W., 127, 7 L. R. A., 705, 17 Am. St. Rep., 918, should apply. We have distinguished this case, decided before the passage of our Negotiable Instruments Act of 1899, in our original opinion, and have cited and quoted from authorities which we approve and apply. As said therein, the principle approved in *Edwards* v. *Fruit Products Co.,* 133 Tenn., 142, 180 S. W., 163, governs here. While that was a case of a noncomplying foreign corporation, in the matter of filing its charter in Tennessee, the reason of the rule adopted applies with at least equal force to a case of a corporation not complying with the Blue Sky Law. In neither case does the statute expressly, or by necessary implication, declare the obligation of the corporation void, as was true of the statute passed upon in *Snoddy* v. *Bank,* supra. This is the essential distinction.

It results that the petition must be dismissed.